Dr. Eugene WINOGRAD, Trustee,
Appellant and Cross–Appellee,

v.

The CLEAR LAKE CITY WATER AU-
THORITY, David T. Riley, Lawrence A.
Otto, Jr., Robert T. Saveley, James C.
Smith, and Mrs. Lee Holley, Appellees
and Cross–Appellants.

No. 01–89–00311–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 28, 1991.

Rehearing Overruled May 30, 1991.

Charles W. Kelly, J. Dougles Sutter, Houston, for appellant and cross-appellee.

W. James Kronzer, Leslie C. Taylor, Reginald H. Wood and Willia E. Schweinle, Houston, for appellees and cross-appellants.

Before DUGGAN, WARREN and MIRABEL, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal of a final judgment non obstante veredicto signed by the trial court on November 29, 1988. We reform the judgment and affirm it as reformed.

The events leading up to this appeal began as far back as 1976 when Dr. Eugene Winograd, plaintiff below, became interested in developing a 65–acre tract of land in the jurisdiction of the Clear Lake City Water Authority ("Clear Lake" or "the Authority"), defendants. According to Winograd, he purchased the tract from Friendswood Development Company after October 5, 1976, the date on which Clear Lake unequivocally committed to providing water, sewage, and drainage facilities to the entire tract. Winograd's planned development of the tract included construction of high quality apartments as well as commercial and retail space.

In reliance on Clear Lake's commitment, Winograd proceeded to construct streets and curbing and to install drainage, sanitary sewer, and potable water pipes for the entire tract at his own expense.[1] In 1977, in keeping with a phasing map he had presented to the Authority, Winograd proceeded with construction of the first phases of his planned apartment community, Camino Village Phases I and II. Clear Lake provided utilities to these apartments as they came "on line."

In December 1978, Winograd appeared before the Authority's board of directors to

---

1. Clear Lake's commitment allegedly included an agreement, which it honored, to reimburse Winograd for 70% of his expense incurred in this phase of construction. Winograd points to the fact that Clear Lake did reimburse him as evidence of the existence of the commitment.

request service to another, separate, eight-acre tract. After this request was approved, the directors allegedly made an unprecedented attempt to force Winograd to "choose" between development of the eight-acre tract or the 65–acre tract. The situation was ultimately resolved by Winograd's alleged agreement to suspend further development of the 65–acre tract until the spring of the next year, based on the board's representation that it would be prepared to supply service at that time. However, on October 9, 1979, the board refused to honor the commitment to provide sewer services to the 65–acre tract. The board continued thereafter to refuse to provide any further utilities to the tract.

In response to the Authority's breach of its commitment, Winograd filed suit in early 1980, seeking to enforce the commitment and naming Clear Lake City Water Authority and its individual directors as defendants. The defendants filed a motion for summary judgment on grounds that the 1976 commitment was not binding on the 1979 board of directors. On May 10, 1982, the trial court granted the motion. The summary judgment was overturned on appeal by the Fourteenth Court of Appeals. *Winograd v. Clear Lake City Water Auth.*, 654 S.W.2d 862 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

On July 25, 1988, the case went to trial, where Winograd developed two main theories of recovery: (1) that he was entitled to damages for Clear Lake's breach of commitment; and (2) that he was entitled to damages under 42 U.S.C. § 1983, the Civil Rights Act of 1871, for Clear Lake's unlawful actions resulting in denial of his constitutionally protected rights to due process and equal protection.

Clear Lake's defense at trial involved claims that (1) the Authority did not and could not make a binding commitment such as that asserted by Winograd; (2) Winograd's timing of his development and his changes in plans and demands caused the termination of his project; (3) sewage capacity was over-committed and unavailable; (4) it became necessary to enforce a moratorium on all multi-family development;

and (5) Winograd failed to comply with certain of the board's policies.

The jury returned a verdict in favor of Winograd on both of his theories of recovery, awarding him $7,350,000 in actual damages and $50,000 in punitive damages against each of three of the directors.

After the verdict, Clear Lake moved the court to disregard certain jury findings. The trial court entered judgment non obstante veredicto (JNOV) in which it (1) disregarded all of the jury's findings of liability for damages relating to Camino Village IV; (2) deleted the jury's award of punitive damages; and (3) refused to award prejudgment interest. Winograd filed a motion to modify, correct or reform the judgment. Clear Lake also moved to reform the judgment or, alternatively, for a new trial. Both motions were denied.

Both plaintiff and defendants appealed the JNOV. Each has filed an initial appellant's brief, an appellee's response, a "reply" brief, and a post-submission brief. This configuration precludes analysis by the commonly utilized "point-counterpoint" method.

To bring order to the issues raised, we will first review the court's charge, the jury's answers, and the judgment non obstante veredicto rendered by the trial court. Points of error, reply points, and counter points, regardless of which party raised them, will be grouped according to the substantive issues raised by the parties' claims of error in the charge and the JNOV. Finally, we will consider two "miscellaneous" points of error that we find irrelevant to the disposition of this appeal.

Following "boilerplate" instructions, the trial court's charge included general instructions and jury questions which elicited answers as follows:

"Dr. Winograd" means Dr. Eugene Winograd, Trustee, who is the Plaintiff, acting in person or through employees or agents.

"Clear Lake" means the Defendant Clear Lake City Water Authority, acting through its board of directors, general manager, employees and agents.

"Directors" means Defendants David T. Riley, Lawrence A. Otto, Jr., Robert T. Saveley, James C. Smith and Mrs. Lee Holley, the individuals who constituted the board of directors of Clear Lake City Water Authority in their official capacity at the time that the transactions in this case occurred.

David T. Riley, Lawrence A. Otto, Jr. and Robert T. Saveley mean those Directors of Clear Lake in their individual capacity. You are instructed that Clear Lake is a political subdivision of the state of Texas charged with providing water, sewage and drainage services. Clear Lake is under a duty to serve its customers without unreasonable discrimination. It must not act illegally or arbitrarily. This duty, however, does not provide an absolute right to unqualified service and this duty must be qualified by Clear Lake's greater duty to enact and enforce rules and orders designed to protect the entire system and its users. Clear Lake has no authority or legal right to zone or regulate land use with respect to architectural significance, esthetics, height or size of buildings, size of lots, density of population, location of buildings by purpose, or the particular use of a structure. Clear Lake may enter into contracts with landowners or developers as may be necessary to a continuing and orderly plan of development of such lands and property so that, to the greatest extent reasonably possible, considering sound engineering and economic practices, all such lands may be placed in position ultimately to receive services.

## ISSUE NO. 1

Do you find from a preponderance of the evidence that Clear Lake breached its obligations with respect to the following projects?

Answer "Yes" or "No":

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOWER | yes |

You are instructed that there was a commitment to provide sewage to the 65–acre tract. You are further instructed that there is a dispute as to the scope of the obligations of Clear Lake under that commitment.

You are instructed that breach means a failure to perform any obligation which forms all or part of a commitment.

## ISSUE NO. 2

If your answer to any part of Issue No. 1 was "Yes," on what date did the breach of breaches (sic) occur:

Answer by month, day and year for each "Yes" response to Issue No. 1.

| | |
|---|---|
| CAMINO VILLAGE III | 10/9/79 |
| CAMINO VILLAGE IV | 10/9/79 |
| CAMINO VILLAGE TOWER | 10/9/79 |

If you answered any part of Issue No. 1 "yes," then answer Issue No. 3.

## ISSUE NO. 3

Do you find from a preponderance of the evidence that Clear Lake's breach of the obligations under its commitment was accompanied by malice with respect to the following projects?

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOWER | yes |

You are instructed that the term "malice" or "maliciously" is defined as ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act.

## ISSUE NO. 4

Equal protection of the laws requires that the government base any differences in treatment of applicants on rational criteria that are reasonably related to a governmental function of that particular governmental unit.

This would prohibit the application of otherwise proper standards if they are not customarily applied in the same fashion to all similar applicants.

Mere mistakes or errors in judgment are not a denial of equal protection. If the evidence of this case shows that there

was a factual basis for the specific decision made, then there is no denial of equal protection.

Do you find from a preponderance of the evidence that Clear Lake failed to afford Winograd equal protection of the laws with respect to any of the following matters?

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

If you answered Issue No. 4 "yes," then answer Issue No. 5.

### ISSUE NO. 5

Do you find from a preponderance of the evidence that the denial of equal protection proximately caused injury to Winograd with respect to any of the following matters:

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

### ISSUE NO. 6

Do you find from a preponderance of the evidence that Clear Lake failed to afford Winograd procedural due process of law with respect to any of the following matters:

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

You are instructed that procedural "due process" requires a government entity such as Clear Lake to provide persons seeking services each of the following:

(1) Standards fairly disclosed in advance;

(2) Standards that are susceptible to accurate understanding;

(3) Notice; and

(4) Application of new requirements on a prospective basis.

### ISSUE NO. 7

Do you find from a preponderance of the evidence that Clear Lake failed to afford Winograd substantive due process with respect to any of the following matters:

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

You are instructed that substantive due process requires that a governmental entity such as Clear Lake not act in an arbitrary and capricious manner. Substantive due process includes each of the following elements:

(1) Standards that are rationally related to a legitimate power of Clear Lake;

(2) Even-handed application of lawful requirements.

Due process has been met or afforded if the evidence in this case shows that there was any rational basis for Clear Lake withholding utility services to the projects.

If you answered either Issue No. 6 or Issue No. 7 "yes," then answer Issue No. 8.

### ISSUE NO. 8

Do you find from a preponderance of the evidence that such denial of due process proximately caused injury to Winograd with respect to any of the following matters:

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

### ISSUE NO. 9

Do you find from a preponderance of the evidence that Clear Lake is estopped from denying utilities with respect to any of the following matters:

| | |
|---|---|
| CAMINO VILLAGE III | yes |
| CAMINO VILLAGE IV | yes |
| CAMINO VILLAGE TOW-ER | yes |

(Instruction omitted as irrelevant.)

### ISSUE NO. 10

What sum of money, if paid now in cash, would fairly and reasonably compensate Winograd for his damages, if any.

Answer in dollars and cents:

| | |
|---|---|
| CAMINO VILLAGE III | $1,984,500 |
| CAMINO VILLAGE IV | $2,719,500 |

CAMINO VILLAGE TOW-
ER $2,646,000

You are instructed that "actual dam-
ages" are the amount you find to be
justified by a preponderance of the evi-
dence as full, just and reasonable com-
pensation for all of the Plaintiff's dam-
ages, no more and no less. Damages
must be based on reasonable economic
probablity and not on mere speculation.

ISSUE NO. 11

What sum of money do you find should
be awarded as punitive damages, if any,
against the following persons?

Answer in dollars and cents:

David T. Riley $50,000
Robert T. Saveley $50,000
Lawrence A. Otto, Jr. $50,000

"Punitive damages" are sums of money
assessed to punish wrongdoers and to set
an example by discouraging or deterring
others from engaging in similar wrong-
doing. Punitive damages may be recov-
ered against public officials when their
conduct is shown to be unlawful and
motivated by evil motive or intent, or
when it involves reckless or callous indif-
ference to the rights of others. You may
consider the enormity of the wrongdoing,
if any, and the necessity of preventing
similar wrongdoing in determining the
size of the punitive damages to be as-
sessed.

After the plaintiff filed a motion and
amended motion for final judgment, the
defendants filed their response "or, alter-
natively, motion to disregard certain jury
findings." The trial court then entered its
JNOV, the operative portions of which fol-
low:

[T]he court concludes that there is no
evidence to support an award of dam-
ages for Camino Village IV. Further-
more, the Court concludes that without
any finding of underlying liability
against any of the directors, there can be
no award of punitive damages against
any of them. Finally, the Court con-
cludes that there is no manner in which
the damage findings of the jury can be
segregated as to future or past damages;

therefore there can be no award of pre-
judgment interest to plaintiff on any of
the damage amounts. Accordingly, it is
ORDERED, ADJUDGED AND DE-
CREED that the jury's answers to Spe-
cial Issues Nos. 1, 2, 3, 9, and 10, solely
as those answers pertain to Camino Vil-
lage IV, be and they are hereby DIS-
REGARDED and the Plaintiff shall take
nothing from the Defendants as respects
Camino Village IV; and it is further
ORDERED, ADJUDGED AND DE-
CREED that the jury's answers to Spe-
cial Issue No. 11 be and they are hereby
DISREGARDED and the plaintiff shall
take nothing from the Defendants David
T. Riley, Lawrence A. Otto, Jr. and Rob-
ert T. Saveley, in their individual capacity
by way of punitive damages; and it is
further
ORDERED, ADJUDGED AND DE-
CREEED that the plaintiff, Dr. Eugene
Winograd, have and recover from the
Defendant Clear Lake City Water Au-
thority, the damages found by the jury
for Camino Village III and Camino Vil-
lage Tower, which such sums aggregate
to FOUR MILLION, SIX HUNDRED
THIRTY THOUSAND FIVE HUNDRED
AND NO/100 DOLLARS ($4,630,-
500.00)....

Winograd challenges the JNOV in four
points of error; Clear Lake and the individ-
ual defendants raise two main challenges
to the judgment in 12 points of error. In
its first five points of error, Clear Lake
challenges the entry of judgment on the
basis of the jury's answers to issues one,
two, and ten, the breach of commitment
issues. In its points seven through twelve,
Clear Lake challenges the jury's answers
to issues four through eight, which covered
Winograd's claims under 42 U.S.C. § 1983,
the Civil Rights Act of 1871. It is impossi-
ble to know whether the trial judge entered
the final judgment based upon the findings
of the jury to issues one, two and ten (the
damages issue) or upon the section 1983
issues together with issue 10. Clear Lake
concedes that Winograd is entitled to a
judgment based upon any set of findings
that will give him his best relief, and, fur-

ther, that he did not need to elect between his alleged remedies in the court below, citing *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988). Having determined that the jury's verdict may be sustained on the basis of issues one, two, and ten, the breach of commitment and damages issues, we will address the jury findings on the section 1983 claims in the context of Clear Lake's challenge to the sufficiency of the evidence to support issue eleven.

## THE JURY'S AWARD OF DAMAGES FOR CAMINO VILLAGE IV

### The no evidence finding by the trial court

In response to special issues one, two, and ten, the jury found that Clear Lake breached its commitment to provide sewage to three of Winograd's construction projects, Camino Village III, Camino Village Tower, and Camino Village IV. It awarded damages for Camino IV in the amount $2,719,500. The trial court concluded that there was "no evidence to support an award of damages for Camino Village IV" and disregarded the jury's award of damages for that project. This wording in the judgment leaves some question as to whether the court found there was "no evidence of liability" or "no evidence of damages."

Winograd argues on appeal that Clear Lake's many objections to submission of any issues on Camino Village IV state a claim of no evidence of *liability*. Having carefully reviewed the language of Clear Lake's objections to the charge, the position argued in Clear Lake's briefs and the extensive evidence presented of damages related to Camino IV, we agree that Clear Lake objected to an absence of evidence as to its liability for Camino Village IV.

During the charge conference, counsel for Clear Lake objected to the submission of any and all issues relating to Camino Village IV on grounds that

> there is no evidence to support any submission as to Camino Village IV. And we would like to note that throughout the entire charge we object to all submissions as to Camino Village IV as a matter of law because there is no evidence

whatsoever to indicate that any plans or any application of any kind regarding Camino Village IV was ever made to Clear Lake City Water Authority at any time by Dr. Winograd.

No similar objection was made regarding Camino Village III or Camino Village Tower. The objection was restated in Clear Lake's motion to disregard the findings.

A judgment notwithstanding the jury's verdict is proper only when a directed verdict would have been proper. *Southwestern Bell Tel. Co. v. Sims,* 615 S.W.2d 858, 861 (Tex.App.—Houston [1st Dist.] 1981, no writ); Tex.R.Civ.P. 301. In other words, the trial court may properly disregard a jury's finding only when there is no evidence to support the finding or when the finding is immaterial. *Burt v. Lochausen,* 151 Tex. 289, 298, 249 S.W.2d 194, 199 (1952); *Stout v. Clayton,* 674 S.W.2d 821, 825 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). The rule applies even if the finding is contrary to the great weight and preponderance of the evidence. *Gulf, Colorado & Santa Fe Ry. v. Deen,* 158 Tex. 466, 470, 312 S.W.2d 933, 937 (1958), *cert. denied,* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958); *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 803 (Tex. Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); Tex.R.Civ.P. 301. In reviewing a complaint that there was no evidence to support a jury finding, we must examine only the evidence and reasonable inferences which support the finding in the light most favorable to that finding. *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978). The finding must be upheld if there is any evidence of probative value to support it. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Rose v. Intercontinental Bank, N.A.,* 705 S.W.2d 752, 754 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.).

On appeal, Clear Lake focuses on the argument that because Winograd never requested utilities for Camino Village IV, there could have been no denial of the request and therefore no breach of a commitment, if any existed, to provide them.

Winograd does not claim to have specifically requested hook-up for utilities for phase IV, but insists that he was not obligated to make such a request since he knew, based on the refusal of hook-up for utilities for phase III, that a request would have been futile. *Mayhew v. The Town of Sunnyvale*, 774 S.W.2d 284, 289–91 (Tex.App.—Dallas 1989, writ denied). Winograd reasons that Clear Lake made a commitment to provide utilities to the entire tract. Therefore, when Clear Lake breached its commitment, it breached its commitment to provide utilities to Camino Village IV, which was a planned phase of the development from the outset. We agree.

An understanding of the mechanics involved in this situation helps in our analysis of the evidence presented by the parties. Typically, a municipal water authority, such as Clear Lake, constructs water and sewage pipelines or "mains" to service a tract of land. However, the water authority does not construct the hookups from the various developers' properties into those pipelines. It is the responsibility of the developer to construct all water and sewer lines *within* the development and then to hook them into the water authority's main pipelines.

Evidence showed an agreement that Winograd would and did construct these facilities for the entire tract at his own expense and Clear Lake would reimburse him for 70% of his cost in doing so. When construction had proceeded to the appropriate stage, he simply notified Clear Lake and "tapped into" the existing water and sewer pipelines that had already been built by the water authority. There was no need to make a separate "request for utilities" each time a construction phase was completed.

Winograd testified that the "mains" were constructed in 1977. Plaintiff's exhibit number four consists of architectural plans containing "as-builts" indicating that, at least by the end of 1978, Clear Lake had built water and sewer mains, including modifications, around the entire perimeter

of Winograd's property. These plans were sufficient evidence to support a finding, implicit in the jury's answer to special issue number one, that Clear Lake's commitment included the entire 65–acre tract.

Winograd also testified that once the October 1976 commitment to supply utilities was made, there was no need to "apply" to Clear Lake for anything further. For Phase I, Winograd testified he presented his preliminary construction plans to the general manager of the Authority and when he reached the appropriate construction stage with Camino Village I, he simply "tapped into" the pipelines. At that point, there was no required administrative step involving the Clear Lake City Water Authority board. To "make everything ready" to tap into the system for Phase II, he simply repeated the steps: he provided preliminary plans for Phase II to the general manager for Clear Lake. The manager, in turn, provided the necessary construction information and Winograd tapped into the system for that part of Phase II that was completed and hooked up before the breach. The procedure allegedly should have been the same for Phases III and IV.

Our review of the documentary evidence reveals that among the many plans presented by Winograd to Clear Lake were a general overall plan for the development of the 65–acre tract (plaintiff's exhibit No. 3), referred to by Winograd as the "original plan," and a "phasing plan" (plaintiff's exhibit 5A). These two documents standing alone are sufficient to show that plans for Camino Village IV were submitted to Clear Lake along with the plans for phases I, II, and III.

The general plan shows three areas of multi-family residential development around the horseshoe shaped tract consisting of 10.33 acres, 7.48 acres, and 19.74 acres.[2] From later plans and maps it is obvious that the first two areas became Phases I and II, respectively, while the third area was broken down into Phases III and IV. The phasing plan, exhibit 5A,

2. The plans submitted also included areas of commercial and retail development, but since the issues on appeal do not specifically involve these areas, we will not discuss them.

clearly indicates Phase IV and a projected construction date of December 1978.

In addition, Clear Lake's own records acknowledge a commitment to "Winograd 65–acre tract ... existing apt. units 449 ... future apartments 450 units ..." or a total of 899 single family dwelling units. (Plaintiff's exhibit 12: Minutes of the board of director's meeting, December 12, 1978 and Clear Lake's "List of Projects for which Sewage Capacity is Committed.") The phasing plan provided to the Authority by Winograd indicates that a total of 862 apartment units was planned for the 65–acre tract. Of these units, 202 were clearly allocated to Phase IV of the development.

We find this evidence legally and factually sufficient to support the jury's answers to special issues one, two, and ten, awarding damages to Winograd for Clear Lake's breach of its commitment to provide utilities to Camino Village IV.

The issue of proximate cause

Clear Lake contends, however, that the absence of an issue on proximate cause is fatal to Winograd's recovery on the breach of commitment issues. We do not agree.

■ Proximate cause is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury and without which the injury would not have occurred. *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). While proximate cause must be proven in a tort action, *Id.; Guthrie v. St. Clair Refining Co.*, 320 S.W.2d 396, 398 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.), it is not the causal standard applied in a suit for damages in contract.

■ In an action for a breach of contract, actual damages may be recovered when the loss is the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981). The evidence in this case established one commitment, one breach, and one result. There was no dispute that Clear Lake's denial of

utilities made it impossible for Winograd to continue development of the 65–acre tract according to his original plan. Winograd's inability to develop apartments without sewage services was clearly foreseeable. Clear Lake did not offer evidence of any other causal factor, but instead disputed the effect of its denial, arguing that, because of the downturn in Houston's real estate market, Winograd's inability to continue the development actually had saved him from losing money.

Since causation on the breach of commitment issues was not disputed, no issue on causation was required. Once the breach was established, the only remaining question was the amount of damages. *See Strain v. Gansle*, 768 S.W.2d 345 (Tex. App.—Corpus Christi 1989, writ denied).

Clear Lake's authority to contract

■ Finally, in response to Clear Lake's argument that the Authority has no power to make a commitment such as that asserted by Winograd in this case, we note that the trial court instructed the jury in special issue one that "there was a commitment to provide sewage to the 65–acre tract." No objection was made to that portion of the instruction now challenged on appeal. Likewise, Clear Lake's complaint on the basis of the statute of frauds was not preserved at trial by proper objection or by submission of an appropriate issue or instruction. Therefore these complaints were waived. TEX.R.CIV.P. 274; TEX. R.APP.P. 52(a).

Winograd's first point of error is sustained; Clear Lake's first five points of error are overruled. Based upon our findings in regard to the breach of commitment issues, we reverse that portion of the JNOV which disregarded the jury's answers as to Camino Village IV and reinstate that portion of the jury's verdict awarding Winograd damages for Camino Village IV in the amount of $2,719,000.

PREJUDGMENT INTEREST

■ In his second point of error, Winograd contends that the trial court erred in failing to award prejudgment interest on his damages. The trial court concluded

that Winograd's past and future damages had not been properly segregated and, based upon the prohibition against an award of prejudgment interest on future damages, refused to award prejudgment interest on any of the damages. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555–56 (Tex.1985). Winograd contends that prejudgment interest was proper because the damages awarded by the jury had accrued as of January 1, 1980 and, therefore, did not include future profits.

The methodology employed by Winograd's expert witness, Dr. Barton Smith, to determine Winograd's damages as of the date of Clear Lake's breach of its commitment involved calculating the estimated cash flow that would have been generated by each project over the 30–year period from 1980 to 2010. He then subtracted the anticipated operating expenses for each of those years, to arrive at the net cash flow stream. Therefore, evidence of future profits, as one element of Dr. Smith's calculations, was presented to the jury. The net cash flow stream was then discounted to its value as of January 1, 1980, chosen by Smith as the approximate date of Clear Lake's breach of the commitment. After calculating the discounted net cash flow stream, Dr. Smith deducted all costs of building the project excluding the land. This figure, assuming the accuracy of the underlying calculations, would represent the loss to Winograd at the time of the breach.

Prejudgment interest is that interest calculated on the sum payable to the plaintiff from the time of his loss or injury to the time of judgment. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 116 (Tex.1978). It is recoverable as a matter of right where a sum of money is determined to have been due and payable at a date certain prior to judgment. *Id.; Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 488 (Tex. 1978).

Had the jury been asked to determine the plaintiff's damages as of January 1, 1980, Winograd would then have been entitled to prejudgment interest on that amount for the period of time from January 1, 1980 to the date of judgment. However, the jury was asked "What sum of money, if paid *now* in cash, would fairly and reasonably compensate the plaintiff for his damages?" In other words, the jury's answer fixed the amount of damages as of August 19, 1988, the date of its verdict, rather than the date of the breach by Clear Lake. It is impossible to determine what elements of damages the jury considered in reaching this finding. Therefore, the answer does not, as Winograd contends, clearly reflect only those damages which had accrued as of the time of the breach.

Since Winograd failed to obtain a jury finding which clearly fixed his damages as of the date of Clear Lake's breach, he is not entitled to prejudgment interest on those damages. *George Thomas Homes, Inc. v. Southwest Tension Systems*, 763 S.W.2d 797, 801 (Tex.App.—El Paso 1988, no writ).[3]

We hold that the trial court did not err in failing to award prejudgment interest. Winograd's second point of error is overruled.

## THE JURY'S AWARD OF PUNITIVE DAMAGES AGAINST THE THREE CLEAR LAKE DIRECTORS

In response to special issue number eleven, the jury awarded punitive damages of $50,000 against each of three directors of Clear Lake. Clear Lake asked the trial court to disregard this finding, arguing that there could be no award of such damages without a finding of underlying liability against the three directors. Agreeing with Clear Lake's argument, the trial court disregarded the jury's answer to special issue 11 and ruled that Winograd take nothing by way of punitive damages from

---

**3.** We note, by virtue of our review of the record in this case, that Winograd objected to the damage issue as submitted and requested instead an issue which was tied to the date of 1–1–80. Clear Lake persuaded the trial court that to use the date set by Winograd's expert would amount to a comment on the weight of the evidence. The trial court apparently agreed and submitted the issue as previously noted. This point, however, was not raised on appeal.

the three directors, Riley, Otto, and Saveley, in their individual capacities.

**The predicate liability complaint**

■ The trial court stated as its basis for disregarding the finding of punitive damages the absence of a "predicate finding" of underlying liability against any of the directors. However, we find that the necessary finding was subsumed in the broad form issue as submitted by the court.

In order to support an award of punitive damages against the directors in their personal capacities, there must have been a finding by the jury that the individual directors' official conduct was illegal, was motivated by malicious or evil intent, or involved reckless or callous indifference to Winograd's rights. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Hinshaw v. Doffer*, 785 F.2d 1260, 1270 (5th Cir.1986) (applying Texas law); 42 U.S.C. § 1983.

In special issue 11, the jury was instructed, without objection by Clear Lake, that "Punitive damages *may be recovered* against public officials *when* their conduct is shown to be unlawful and motivated by evil motive or intent, or *when* it involves reckless or callous indifference to the rights of others." (Emphasis added.) This instruction sets out the requisite findings of liability as conditions for an award of punitive damages. *Smith*, 461 U.S. at 56, 103 S.Ct. at 1640. In addition to this conditional language, the interjection of the phrase *"if any"* in the last sentence of the instruction also indicates that the jury was asked to consider *whether* any wrongdoing was committed by the directors before assessing damages. ("You may consider the enormity of the wrongdoing, *if any* . . . in determining the size of the punitive damages to be assessed.") The broad form submission of issue number 11 was proper. *Members Mutual Ins. Co. v. Muckelroy*, 523 S.W.2d 77, 82 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Lemos v. Montez*, 680 S.W.2d 798, 799 (Tex.1984); TEX.R.CIV.P. 277.

**Immunity**

■ We also find Clear Lake's argument that the directors enjoy immunity from personal liability as a matter of law to be without merit. Clear Lake claimed in its motion for JNOV that the directors violated no clearly established statutory or constitutional rights of which a reasonable person would have known in the sense required by the United States Supreme Court in order to strip them of their qualified immunity.[4] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ The rule is that personal liability may be imposed upon a governmental official for actions he takes under color of law in violation of the plaintiff's rights. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Damages are available against public officials for an abuse of office. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). Punitive damages may be imposed against a public official on the same basis as against private tortfeasors, that is, upon a showing that the official's conduct was motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith*, 461 U.S. at 55–56, 103 S.Ct. at 1639–40.

The law recognizes the principle of qualified immunity in an attempt to balance the competing interests of protection of citizens' rights and protection of officials from insubstantial claims arising from the exercise of their discretion. *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732. Qualified immunity is based on a showing of good faith. *Id.* at 814–15, 102 S.Ct. at 2736–37. Good faith has both an objective and a subjective component. *Id.* at 815, 102 S.Ct. at 2736.

■ An official's claim of *objective* good faith and an assertion of qualified immunity based thereon is defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would vio-

---

**4.** Clear Lake does not contend that the directors are entitled to absolute immunity.

late the statutory or constitutional rights of the plaintiff. *Subjective* good faith is defeated if the official took the action with the *malicious intention* to cause a deprivation of those rights. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736; *see also Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

Because an official's *subjective* good faith is a question of fact that requires resolution by a jury, the *Harlow* Court created an additional safeguard for the protection of officials from "bare allegations of malice" which might subject the official to the costs of trial. The Supreme Court held as a matter of law that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known. *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737–38. In so holding, the Court reasoned as follows:

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official ... can prove that he neither knew nor should have known of the relevant legal standard, the defense [of immunity] should be sustained.... The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

*Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

The jury found that Winograd's established rights of due process and equal protection were violated. The jury further found in issue 11 that the conduct of the individual directors was unlawful and motivated by evil motive or intent or involved reckless or callous indifference to the rights of others. This finding satisfies the negation of good faith as required by *Harlow* for the imposition of liability. Therefore, Clear Lake's claims of immunity are without merit. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

The sufficiency of the evidence

When judgment is rendered non obstante veredicto on one or more questions, the appellee may bring forward by cross-point any ground that would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict, including the ground that one or more of the jury's findings has insufficient support in the evidence. Tex.R.Civ.P. 324(c). Since our holding requires us to reinstate the jury's answer to special issue 11, we must next consider Clear Lake's challenge to the sufficiency of the evidence to support that answer.

 When both legal and factual insufficiency points of error are raised, we address the claim of legal insufficiency first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In addressing a no evidence point of error, we review only the evidence tending to support the jury findings. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). We must consider that evidence and any inferences to be drawn from it in a light most favorable to the verdict and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Id.; In re King's Estate,* 244 S.W.2d at 661.

 As evidentiary support for the jury's finding to special issue 11, Winograd directs our attention to the tapes and transcripts of various meetings of the board of directors of Clear Lake City Water Authority that were introduced into evidence. In addition, he cites portions of the testimony at trial for the proposition that sufficient evidence was offered to support the finding

that the directors behaved illegally and displayed arrogance and indifference to his rights. The evidence offered to show the directors' unlawful conduct, malice, or conscious disregard for Winograd's rights included the following examples.

David T. Riley stated, during a board meeting on October 22, 1981, that the Authority was regulating development by "... whether we want to use the term or not, zoning or some other form of control that doesn't exist in Houston in that we were fed up with apartments."[5] At trial, Riley first denied making the statement and then admitted that he made it and that it reflected his philosophy of government.

Director Saveley, when asked about the Authority's written list of "projects for which sewage capacity had been committed," called the list a "wish list" for Christmas presents. However, the jury had also heard evidence that Winograd, taking the commitment seriously, had relied on it in building streets, curbing, drainage, and sanitary sewer and potable water pipes for the entire 65–acre tract.

The aesthetics of a planned building are not a proper basis for determining whether to provide sewage services to an applicant. *Cohen v. Clear Lake City Water Auth.*, 687 S.W.2d 406, 409 (Tex.App.— Houston [14th Dist.] 1985, no writ); *see also Tri–City Fresh Water Supply Dist. v. Mann*, 135 Tex. 280, 142 S.W.2d 945 (Tex. 1940). Nevertheless, when asked if he would vote a building down on the grounds that it was ugly, director Otto responded, "Oh, you bet! "

Other evidence tending to support the jury's finding that the directors acted illegally and with conscious disregard of the rights of others included:

(1) the comment by director Savely that a typical apartment complex was going to hold "333 robbers and rapists;"

(2) the conclusion stated by director Riley that it had been a mistake to provide

utilities to certain apartments because they are "messes" and that he would turn down a request for utilities from other apartments on the basis that they were going to be "messes" like the ones already built;

(3) an admission by director Savely that the directors knowingly promulgated a developmental policy regarding availability of utility services which was not binding on the board but instead was "B.S.— totally worthless;"

(4) the directors' ex post facto application of certain of the Authority's developmental policies to Winograd;

(5) director Otto's admission that, in order to get any sewer services at all, Dr. Winograd was presented an "option" to choose between services on one tract of land or services on another while no other apartment builders were put to such a choice.

We hold that this evidence of conduct on the part of the directors is legally sufficient to support the jury's answer to special issue eleven. We next review the factual sufficiency of the evidence by considering the evidence against as well as in favor of the finding.

At trial, Clear Lake argued that the directors' statements, made and recorded during official board meetings as part of the board's deliberations, and their actions in denying the services, did not prove or even suggest *personal* malice or hostility toward Winograd. However, under the objective test as set out in *Harlow*, a showing of the official's *personal* antipathy is not required. The proper focus is the government official's conduct while acting under color of law and the objective determination of his knowledge of the law governing his conduct. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736; *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105; *Smith*, 461 U.S. at 49–51, 103 S.Ct. at 1636–38. In addition, Clear Lake attempted to show that its denial of

---

**5.** The authority admits that desirability of certain types of buildings, and the need for the community to plan and provide for parks and recreation facilities, were among the justifications for their actions. However, such func-

tions are reserved only to municipalities with zoning powers. *Cohen v. Clear Lake City Water Authority*, 687 S.W.2d 406 (Tex.App.—Houston [14th Dist.] 1985, no writ). TEX.REV.CIV.STAT.ANN. art. 1011a.

services was based on a concern for overall land use planning in the municipality. This concern allegedly comprised a rational basis negating illegality, malice, or conscious indifference in its denial of utilities to Winograd.

■ The jury is the sole judge of the evidence and, as the trier of fact, the jury determines the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Extensive evidence was presented on the issue of conduct warranting an assessment of punitive damages and Clear Lake's defenses. The jury's evaluation of that evidence and its answer to issue 11 should not have been disregarded. Clear Lake's challenge to the sufficiency of the evidence is overruled.

Winograd contends by cross-point that it was error to exclude other evidence supporting an award of punitive damages. The trial court excluded considerable evidence of the directors' alleged malice and conscious indifference to Winograd's rights on grounds that it was more prejudicial than probative because the offered statements were made after suit had been filed. We agree that it may have been impossible to separate the directors' malice toward Winograd as an apartment developer from their anger toward him as plaintiff. TEX. R.CIV.EVID. 403. We cannot say that the trial court erred in excluding the evidence.

Recovery of punitive damages against Clear Lake

■ In another cross-point, Winograd also claims error in the trial court's refusal to submit an issue to the jury on punitive damages against Clear Lake. He preserved this claim by objection and the submission of an issue to the court at the charge conference. However, we believe that municipalities are immune from liability for punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263, 101 S.Ct. 2748, 2757, 69 L.Ed.2d 616 (1981). The holding in *City of Newport* is based on the persuasive reasoning that nothing in the legislative history of section 1983 suggests that Congress intended to abolish the general doctrine of municipal immunity for punitive damages. In addition, public policy considerations do not support exposing municipalities to punitive damages when the financial burden for such damages would be passed on to and punish only the innocent taxpayers. 453 U.S. at 264–67, 101 S.Ct. at 2758–60.

Both parties to this action agree that the Authority acts only through its board of directors. The Authority, therefore, can express no malice or reckless disregard independent of the malice of its officials. 453 U.S. at 267, 101 S.Ct. at 2759. A more effective means of punishment and deterrence is provided for under 42 U.S.C. § 1983 by allowing assessment of punitive damages against the offending officials. 453 U.S. at 269–70, 101 S.Ct. at 2760–61.

Winograd's two cross-points of error are overruled.

Entry of judgment against the directors

■ Winograd also challenges the trial court's entry of judgment for actual damages against Clear Lake City Water Authority only. He contends the trial court's failure to enter the judgment against the individual directors of Clear Lake in their official capacities as well was error.

Two general instructions support Winograd's argument on this point. The trial court instructed the jury that "Clear Lake means the Defendant Clear Lake City Water Authority, *acting through its board of directors....*" Next, the trial court included an instruction stating that

"Directors" means Defendants David T. Riley, Lawrence A. Otto, Jr., Robert T. Saveley, James C. Smith and Mrs. Lee Holley, the individuals who constituted the board of directors of Clear Lake City Water Authority *in their official capacity* at the time that the transactions in this case occurred. (emphasis added)

No objections were raised by Clear Lake to these instructions.

■ Clear Lake correctly states that suits against officials in their official capacity generally represent only another way of pleading a section 1983 action against a

governmental entity of which an official is an agent. *Graham*, 473 U.S. at 165, 105 S.Ct. at 3104; *Monell v. Dept. of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A suit against an official in his official capacity seeks to impose liability only upon the entity, and any judgment in such a suit is collectible only against the governmental entity, not against the official's personal assets. *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Therefore, Clear Lake contends that the error complained of is harmless. However, while Clear Lake may be correct in stating that there is no longer a *need* to bring official-capacity actions against local governmental officials, this position begs the question of whether Winograd is *entitled* to have the judgment entered against the directors in their official capacities based on his pleading and proof at trial. We find that he is.

Support for Winograd's argument that a judgment against Clear Lake entitles him to judgment against the directors in their official capacities may be found in *Kentucky v. Graham*, 473 U.S. at 166, note 11, 105 S.Ct. at 3105, note 11. Relying on FED.R.CIV.P. 25(d)(1), *Graham* points out that, pending final resolution of an official-capacity action in federal court, death or replacement of an official named in the suit will result in *automatic substitution* of the official's successor in office. Thus it appears that when liability of the governmental entity is established, the law contemplates automatic entry of judgment against the entity's officials in their official capacity.

Winograd's pleadings contained allegations against the directors in their official capacities. The jury was instructed, and Clear Lake also agreed, that the Authority acts only "through its board of directors." Based upon the instructions in the charge, submitted without objection on these grounds, the jury's findings of liability for actual damages against Clear Lake City Water Authority constitute findings of liability against the directors *in their official capacities.* Winograd is entitled to entry of judgment against Clear Lake and its board of directors in their official capacities. *Id.*

## THE 42 U.S.C. § 1983 FINDINGS

As pointed out earlier, when the trial court renders a JNOV on one or more jury questions, the appellee may bring forward by cross-point any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict. TEX. R.CIV.P. 324(c). Since our holding requires reinstatement of the jury's answer to special issue 11 and the entry of judgment for punitive damages, we must now address Clear Lake's challenge to the factual sufficiency of the evidence to support the jury's findings of actual damages.

Winograd contends that he is entitled to recover punitive damages under both theories of recovery pleaded—his tortious breach of contract theory, *see Benjamin Franklin Sav. Ass'n v. Kotrla*, 751 S.W.2d 218, 222 (Tex.App.—Houston [14th Dist.] 1988, no writ), and his section 1983 claims. Punitive damages are clearly recoverable under Winograd's section 1983 claims once actual damages are proven. *Simpson v. Weeks*, 530 F.Supp. 196, 207 (E.D.Ark.1977) *rev'd in part on other grounds*, 570 F.2d 240 (5th Cir.1978), *cert. den.*, 443 U.S. 911, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). Therefore, we find it unnecessary to address Winograd's alternate claims of a contractual tort in this case.

We will review Clear Lake's challenge, in its points of error seven through twelve, to the sufficiency of the evidence to support the jury's answers finding Clear Lake liable for actual damages under Winograd's section 1983 claims.

The jury found that Clear Lake failed to afford Winograd equal protection of the laws, and denied him procedural and substantive due process with respect to Camino Village III, Camino Village IV, and Camino Village Tower. We will review the evidence which tends to support these findings.

Winograd's application for service allegedly was denied on the ground that a moratorium on multi-family development had

been instituted by the Authority. At trial, Winograd demonstrated that Clear Lake's alleged moratorium on development was not applied to any developer who had a pre-existing commitment from the Authority other than Winograd. Specifically, during the moratorium period, and after denial of Winograd's utilities, the Authority granted an application by a developer (Gostenhoffer) to provide sewage service to 105 apartment units which had been listed as a project "for which commitments had been made," like Winograd's 65–acre tract.

Winograd also demonstrated that, beginning just three days after Clear Lake's moratorium was enacted on December 12, 1978, and throughout the time it was in effect, the Authority, acting through its directors, issued commitment letters or "go-aheads" on 106 single family homes and numerous commercial developments, actually encouraging their construction. Approximately 67 commercial service commitments were approved, covering a total of approximately 1,200,000 to 1,500,000 square feet, while Winograd's 190,000 square foot office building was denied utilities. There was evidence that none of the developers of these other commercial projects had a pre-existing commitment for services from Clear Lake while Winograd did.

Winograd also introduced evidence that the "lift station problem," claimed by the Authority as a reason for their denial of Winograd's service, was "feigned." He introduced the minutes from the board of directors' October 19, 1976 meeting which indicated that Trammel Crow, developer of an adjacent addition, was planning to install a lift station to which Winograd could have connected for service to the center section of his tract. The Trammel Crow development in fact received service from the same sewage facilities Winograd sought during the period of the moratorium.

In addition, Winograd presented evidence that Clear Lake's complaint that he failed to comply with certain "developmental policies" was based on policies which were enacted *after* the board renounced its commitment to him. He also showed that he made one more request for services after the new sewage treatment plant was completed and after he had complied with all the new developmental policies. He was, once again, denied "for other reasons" that were never explained by the directors.

This is some evidence to support the jury's findings. If there is more than a scintilla of evidence to support the challenged findings, the findings are supported by legally sufficient evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Stafford v. Stafford*, 726 S.W.2d at 16. The evidence presented constitutes some basis for differing conclusions by reasonable minds about the existence of the vital fact in issue and thus amounts to more than a scintilla. *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

Next, as we consider the factual sufficiency of the evidence, we must review all the evidence both in favor and in opposition to the jury's finding. We may set aside the verdict only if the evidence is so weak or the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Garza*, 395 S.W.2d at 82; *Sheridan & Son v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Clear Lake presented the following reasons for its denial of Winograd's utilities: (1) Winograd never had a commitment for utilities for the entire tract; (2) there was a moratorium on all multi-family construction instituted in 1978; (3) the Authority did not have a lift station to service the tract; (4) there was no adequate force main to service the tract; (5) Winograd failed to comply with certain developmental policies; (6) Winograd had traded his rights to service for the 65–acre tract in exchange for service to a separate eight-acre tract.

More specifically, Clear Lake presented evidence that its moratorium was imposed on *all* multi-family housing that did not have commitment letters issued on or before December 12, 1978. Its directors stated that the problems with the lift station and force main were not contrived but had existed since October 5, 1976, the date Win-

ograd claimed Clear Lake made the commitment. While admitting that the developmental policies applied to Winograd were actually enacted after his request for utilities had been "tabled," Clear Lake insisted that this did not constitute a denial of due process.

Clear Lake also asserted that Winograd was not treated differently from similarly situated persons, but received different treatment because his situation was unique. According to Clear Lake, Winograd's tract was at the end of the existing sewer line and posed engineering problems not shared by the other projects that were approved for utilities. This fact also allegedly established a rational basis for Clear Lake's denial of utilities to Winograd.

Apparently the jury found the evidence supported Winograd's contentions that Clear Lake denied him due process and treated him differently from others similarly situated. After hearing all the evidence, they rejected Clear Lake's defenses. The jury also answered special issues five and eight, the causation issues, in favor of Winograd.

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co.,* 682 S.W.2d at 680. We may not substitute our opinion for that of the trier of fact. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–34 (Tex.1986); *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Rego Co.,* 682 S.W.2d at 680. The evidence presented to the trial court was not so weak, nor are the findings of the jury so against the great weight and preponderance of the evidence, as to be clearly wrong and unjust.

Clear Lake's points of error seven through twelve are overruled.

## MISCELLANEOUS

Two issues were raised by Clear Lake that are irrelevant to the disposition of this appeal. These miscellaneous points and a brief explanation of each follow.

Clear Lake contends that the trial court erred in entering judgment on special issue nine because the doctrine of estoppel cannot apply to governmental units and because the issue is immaterial. Even if there were error in submitting issue nine, such error was harmless since, as Clear Lake points out, the issue was immaterial. The judgment may be properly sustained without regard to this issue or the jury's answer.

Likewise, we overrule Clear Lake's complaint regarding the issue of waiver submitted in issue number 12 as irrelevant. There was no showing that the trial court's judgment was in any respect based on the answer to issue number twelve.

We find that Clear Lake's second reply point has merit, and we sustain the trial court's refusal to award prejudgment interest on Winograd's damages. We have considered all of Clear Lake's other points of error, cross-points, and counterpoints, and they are all overruled.

Winograd's points of error one, three and four are sustained. We have considered Winograd's second point of error and all his cross-points and counterpoints, and they all are overruled.

The judgment is reformed in the following particulars:

(1) The trial court's judgment notwithstanding the verdict disregarding the jury's answers to special issues numbers one through ten as to Camino Village IV is reversed, and the jury's award of $2,719,500 in actual damages for Camino Village IV is reinstated; and

(2) The trial court's judgment notwithstanding the verdict disregarding the jury's answer to special issue number 11 is reversed, and the jury's awards of $50,000 punitive damages against each of the defendants, David T. Riley, Robert T. Saveley, and Lawrence A. Otto, Jr., in their individual capacities, are reinstated; and

(3) The trial court's judgment is further reformed to provide that Winograd have and recover from the Clear Lake City Water Authority and its board of directors in their official capacities only, and not individually, the damages as found by the jury for Camino Village III, Camino Village IV,

and Camino Village Tower, totalling $7,350,000; post judgment interest; all costs of suit; and, pursuant to stipulation by the defendants, for reasonable and necessary attorneys' fees in the amount of $400,000 up to the date of judgment; for reasonable and necessary attorneys' fees of $75,000 for this appeal to the Court of Appeals; for reasonable and necessary attorneys' fees in the amount of $25,000 if this matter be appealed to the Supreme Court of the State of Texas and he prevails; and for reasonable and necessary attorneys' fees in the amount of $25,000 if this matter be appealed to the Supreme Court of the United States and he prevails.

The judgment, as so reformed, is affirmed.

WARREN, J., not participating in the decision.