Dr. Ernest S. SEARS, Appellant,

v.

Emma Jane COOPER, Appellee.

No. 1874.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 15, 1978.

Rehearing Denied Dec. 6, 1978.

Russell H. McMains, William H. Payne, Fulbright & Jaworski, Houston, for appellant.

Jim M. Perdue, Andrew L. Todesco, Miller, Gann & Perdue, Houston, for appellee.

CIRE, Justice.

This is a medical malpractice case.

Ernest M. Cooper, in the capacity of guardian of the person and estate of his wife, Emma Jane Cooper, instituted this suit against appellant, Dr. Ernest S. Sears. The voluminous record in this case may be summarized as follows.

Dr. Sears had been Mrs. Cooper's physician for approximately twenty years at the time of the treatment which is the basis for this suit. On October 12, 1972, Mrs. Cooper complained to Dr. Sears of not feeling well and of having a slight puffiness, or edema, in her face and hands. Dr. Sears prescribed Enduron, a moderate diuretic manufactured by Abbott Laboratories[1], for treatment of the edema. He instructed her to take one tablet a day. Mrs. Cooper called Dr. Sears' office shortly after this visit and told the nurse that the Enduron made her ill. The nurse instructed her to discontinue the medication until Dr. Sears returned to the city on October 20.

Mrs. Cooper saw Dr. Sears on October 20, at which time she had the same general complaint of not feeling well, in addition to nausea and the continued edema. Dr. Sears later noted in the hospital record that she acted strangely on that date. He instructed her to resume the Enduron.

1. Abbott Laboratories was joined as a defendant in the trial court but had a directed verdict rendered in its favor at the close of the evidence.

On the evening of October 21 Mrs. Cooper called her husband at work and asked him to return home, as she was ill. On Sunday morning, October 22, Mr. Cooper called Dr. Sears and advised him of his wife's illness. Dr. Sears told him to discontinue solid foods, give her liquids, and bring her to his office on Monday. Mr. Cooper gave Mrs. Cooper a glass of tea, and shortly thereafter found her unconscious. He rushed her to Heights Hospital where she was admitted in a comatose state. It was subsequently determined that she had sustained permanent brain damage. Dr. Sears' final diagnosis on discharge was anoxic encephalopathy due to coma caused probably by severe electrolyte imbalance. Mrs. Cooper is currently institutionalized, and the testimony showed that she will require custodial care for the rest of her life.

The Coopers sued Dr. Sears on several counts of negligence. The primary grounds of negligence urged were the initial prescription of Enduron and the subsequent instructions to resume the drug without performing electrolyte imbalance testing. Other grounds included prescription of Enduron in combination with another drug and inappropriate treatment upon Mrs. Cooper's admission to Heights Hospital. The jury found Dr. Sears negligent in ordering the resumption of Enduron and in failing to perform electrolyte testing on October 20; however, only the first of these was assigned as a proximate cause of Mrs. Cooper's injuries. She was awarded $500,-000.00 for reasonable medical and institutional expenses.

█ The primary thrust of Dr. Sears' appeal is that there is no evidence, or insufficient evidence, to support the jury's findings of negligence and proximate cause. In passing on the "no evidence" points, we must consider the evidence in the light most favorable to appellant and reject all contrary evidence and inferences. The "insufficiency of the evidence" points require us to weigh and consider all the evidence in the case. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The trial, which took three weeks, produced an extensive record replete with expert testimony. The Coopers' primary expert witness was Dr. George David Lundberg, a California physician specializing in pathology. He testified that Mrs. Cooper suffered from electrolyte imbalance which was aggravated by the diuretic Enduron, and that this aggravation resulted in her brain damage.

Briefly, electrolytes are electrically charged substances, such as sodium and potassium, which are found in the blood. A particular balance or concentration of these substances in the blood stream is necessary for sustaining life. An imbalance produces detrimental results ranging from disorientation and weakness to coma and death. An imbalance may result from increased ingestion of fluids or rapid loss thereof, as by continued vomiting or diarrhea. The use of a diuretic, such as Enduron, which causes the body to lose fluids, may also cause an imbalance. Laboratory tests performed on a blood sample can determine whether there is a proper concentration of electrolytes in the system. These tests were not performed on Mrs. Cooper until after her admission to the hospital. Dr. Sears' own records showed that Mrs. Cooper was admitted to the hospital with "severe electrolyte imbalance". It was primarily on Dr. Sears' records that Dr. Lundberg based his opinion.

Dr. Sears produced a number of medical experts who gave their opinions as to the possible causes of Mrs. Cooper's condition. These causes included hepatic coma, meningial disease, cerebral hemorrhage, encephalomelitis, and stroke.

█ After examining the record, we feel that there was sufficient evidence to support the jury's verdict, and so affirm the judgment of the trial court.

On the issue of negligence, the evidence indicated two departures from accepted practice, the instructions to resume the drug after it had made Mrs. Cooper ill and the prescription of Enduron in the absence of a diagnosis. Dr. Sears himself, as well as the expert witnesses called by both sides,

testified that a physician should know a patient's condition before prescribing a drug. Expert witnesses on both sides indicated that if a drug makes a patient ill it should be discontinued, or at the very least an investigation should be made into the cause of the illness.

Appellant attacks much of this testimony on the ground that the standard of care of specialists differs from that of general practitioners, and as a result the testimony of appellee's expert is insufficient as to Dr. Sears. According to appellant, this is contrary to the rule in *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949), which requires testimony by a doctor of the same school as the defendant that the diagnosis or treatment was negligent and a proximate cause of the patient's injuries.

The *Bowles* rule was qualified by *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933 (1953). There the Texas Supreme Court held that where the subject of inquiry is common to and equally recognized and developed in all fields of practice, then any physician familiar with the subject may testify as to standard of care. Doctor Lundberg testified that the standards relating to the use of a diuretic are uniform throughout the areas in which he had practiced, Alabama, Texas, Hawaii, and California, and do not vary among the states. He classified this standard as a national and not a local one. He further stated that the standard does not vary in the approaches taken by specialists and general practitioners. *See also Simpson v. Glenn*, 537 S.W.2d 114 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).

■ Appellant did not challenge the qualifications of appellee's experts on this ground at the trial level. In addition, the question of whether a witness is qualified as an expert is one for judicial determination and is reviewable only for an abuse of discretion. *Seeley v. Eaton*, 506 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.). Appellant's fourth, fifth and sixth points of error alleging no evidence and insufficient evidence as to negligence are overruled.

■ On the issue of proximate cause, we feel that there is sufficient circumstantial evidence to support the jury's verdict. "Proximate cause, like any other ultimate fact, may be established by circumstantial evidence." *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.Sup.1975).

Mrs. Cooper first took the Enduron when it was prescribed by Dr. Sears on October 12, and she ceased taking it when so ordered. The jury could, therefore, reasonably conclude that she then resumed taking the Enduron when ordered to do so by Dr. Sears. Also, several of the Enduron tablets given to Mrs. Cooper by Dr. Sears were unaccounted for after she was hospitalized. This was some evidence from which the jury could conclude that she had resumed the drug.

■ Further, the hospital records concerning Mrs. Cooper's illness were admitted into evidence. These records were prepared by Dr. Sears. The medical history portion recorded at the time of Mrs. Cooper's admission stated that she had been taking Enduron and may have taken too much. The record in this case indicated that Dr. Sears could have known of this by way of a telephone conversation with Mrs. Cooper the night before her admission to the hospital. Mr. Cooper testified that Dr. Sears stated to him that he had talked to Mrs. Cooper that night. Evidence of a patient's statements which have been made to a physician for purposes of medical diagnosis or treatment and which describe the medical history of an ailment is not excluded by the hearsay rule. *Walker v. Great Atlantic & Pacific Tea Co.*, 131 Tex. 57, 112 S.W.2d 170 (1938); *Texas Employers' Insurance Association v. Steadman*, 415 S.W.2d 211 (Tex.Civ. App.—Amarillo 1967, writ ref'd n. r. e.).

■ In addition, there was testimony by Mr. Cooper that on the evening of October 21 his wife told him on the telephone that she had taken two pills and wondered if she should take a third. This evidence was admissible as res gestae. *Texas Employers' Insurance Association v. Butler*, 483 S.W.2d 530 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). There was ade-

quate independent proof of the fact related by Mrs. Cooper. *Truck Insurance Exchange v. Michling*, 364 S.W.2d 172 (Tex. Sup.1963). This included the information contained in Dr. Sears' records, and the facts that some pills were missing and that Mrs. Cooper's condition in the hospital was consistent with her having taken Enduron. *See Texas Employers' Insurance Association v. Butler*, supra at 533–34. Appellant's first, second and third points of error alleging no evidence and insufficient evidence as to proximate cause are overruled.

■ Appellant's seventh point of error attacks the reasonableness of the jury's verdict of $500,000.00 for medical and institutional care. It is apparently appellant's contention that the reasonableness of this sum depends on their being an evidentiary link between Mrs. Cooper's condition and Dr. Sears' instructions to her to resume the Enduron. We note first that the record discloses sufficient evidence to support the award of the sum of $500,000.00. *See City of Houston v. Moore*, 389 S.W.2d 545 (Tex. Civ.App.—Houston 1965, writ ref'd n. r. e.). However, because we have held that there is sufficient evidence linking Dr. Sears' action with Mrs. Cooper's present condition, it is unnecessary that we comment further on appellant's argument under this point of error. It is accordingly overruled.

Affirmed.