**Lorraine Marie WHIPPLE, Appellant,**

v.

**Gustav DELTSCHEFF and Grace Deltscheff, Surviving Parents of Joan Irene Deltscheff, Deceased, Appellees.**

**No. C14-86-420-CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 21, 1987.

Rehearing Denied June 11, 1987.

Joann Storey, Frank E. Sanders, Houston, for appellant.

Robert F. Stein, Valorie W. Davenport, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This is a wrongful death case. Gustav and Grace Deltscheff sued Harris County and Lorraine Whipple, alleging that their negligence proximately caused the death of their daughter, Joan Irene Deltscheff. Upon findings of negligence by the jury, the trial court entered judgment against the defendants in the amount of $273,000 together with $65,711.54 prejudgment interest. From this judgment both Ms. Whipple and Harris County appeal. We affirm the judgment of the trial court as reformed.

On a foggy, rainy evening in January 1981, Lorraine Whipple and Joan Deltscheff, home from college for the Christmas holidays, were driving south on an unlighted, three-lane county road. The far right lane in which the college girls were driving ended abruptly in a ditch. The automobile, driven by Ms. Whipple, went partially into the ditch at the end of the lane, came out of the ditch and slid across the northbound lane where it was struck by an oncoming vehicle. As a result of the collision, Joan Deltscheff was killed and Lorraine Whipple was seriously injured.

In response to special issues, a jury found that Harris County was negligent in failing to place adequate warning signs on the road, that Lorraine Whipple failed to keep a proper lookout, and that the negligence of each defendant was a proximate cause of the accident. The jury attributed ninety percent of the negligence to the county and ten percent to Lorraine Whipple.

The issues presented on appeal concern whether there is no evidence or insufficient evidence to support the jury's findings and whether the Texas Wrongful Death Statute applies to counties.

Appellant Whipple originally brought nine points of error. Points five, seven, and nine have subsequently been waived. In points of error one through four, she asserts that there is no evidence or, alternatively, the evidence was factually insufficient to support the finding that Whipple failed to keep a proper lookout and that ten percent of the negligence that caused the occurrence in question was attributable to her.

In deciding a "no-evidence" point, an appellate court must disregard all evidence contrary to the trial court's finding, and if there is any evidence remaining which would support the finding, the judgment of the trial court must be affirmed. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex.1986). Where the appellant challenges the factual sufficiency of the evidence to support a finding, the appellate court must consider all the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

The only witnesses to see the collision were the driver of the automobile behind Whipple's and the driver of the automobile which hit the Whipple vehicle. Whipple had no independent recollection of the accident or the moments preceding. In support of the jury finding that Whipple failed to keep a proper lookout is the undisputed evidence that a yellow sign was posted 230 feet before the pavement ended. It warned: "Right Lane Ends." The reflective paint on the sign made it visible even at night. The photographic exhibits show that southbound traffic had an unobstructed view of the sign. The only skid marks were the last eight feet before the end of the lane.

Appellant argues that such proof constitutes no evidence or insufficient evidence that Whipple failed to keep such a lookout as a person using ordinary care would have kept. Her basic premise is that the warning was inadequate to advise a driver of the action required. The investigating police officer characterized the termination of the lane as "abrupt," a "radical dropoff," and "a big surprise." He agreed that after a motorist passed the sign there were no further warnings, not even delineator poles, only total darkness. He further testified that the skid marks indicate that Whipple had applied her brakes and attempted to move to the left. The driving conditions, including the lack of lighting and the weather, were undisputed. Whipple presented Mr. Leonard B. West, a registered professional engineer, as an expert witness for the defense. He testified that one sign was not sufficient to alert a driver that a critical maneuver must be made. He described other signals that could have given guidance to drivers and made the road safe.

From the mere eight feet of skid marks immediately before the end of the lane, the jury could reasonably infer that Whipple reacted to a perception of the ditch rather than to the warning sign. Whipple's failure to adjust her speed and change lanes immediately after the warning sign is a further indication that Whipple did not see the clearly visible sign. Our review of the evidence leads us to conclude that the evidence is both legally and factually sufficient to justify the finding by the jury that Whipple failed to keep a proper lookout and that ten percent of the negligence that caused the failure was attributable to Whipple. We overrule appellant Whipple's first four points of error.

In points of error six and eight, Whipple contends that there was insufficient evidence to support the jury award to both Mr. and Mrs. Deltscheff for mental anguish, grief, and bereavement in the past and in the future. In weighing the evidence of mental anguish presented to the jury, we note the conspicuous absence of the usual indicia of emotional injury. The appellant accurately observes that there is no testimony as to the reaction of the parents upon learning of the death of their daughter or as to what they saw or heard in the emergency room when they responded to the call from the hospital. There is

no testimony that the parents suffered any psychic or physical detriment as a result of their daughter's death. There is no testimony that either parent sought psychiatric help. In sum, appellant argues that there is no evidence from which one could even infer that either parent suffered emotional trauma, depression, or any other secondary response to the normal reaction of grief. In addition to these omissions, neither parent alleged that emotional distress caused by their loss interfered with their ability to work or caused them to vary their routine activities. The testimony presented by the appellees consisted only of statements by each parent that their relationship with their daughter was "good," that they visited her regularly at college, that she came home for every holiday, that she voluntarily helped with household chores, and that she had promised she would take care of her mother in her old age. The evidence also included letters and homemade greeting cards in which Joan expressed her warm affection for her parents. Neither appellant presented evidence tending to refute a loving, devoted relationship.

■ The Supreme Court of Texas has recognized that destruction of the parent-child relationship is a significant, compensable injury. *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983). Proof of such a relationship constitutes some evidence that the surviving parents suffered mental anguish from the death of their child. *Moore v. Lillebo,* 722 S.W.2d 683, 686 (Tex. 1986). In *Moore,* the court defined mental anguish in wrongful death cases as "the emotional pain, torment, and suffering that the named plaintiff would, in reasonable probability, experience from the death of the family member." *Id.* at 688. Since mental anguish is the emotional response to the wrongful death (*Id.* at 687), it is not necessary to show physical injury. *Id.* at 686. Such pain does not always manifest itself to the world; it is a hurt often borne in silence. *Connell v. Steel Haulers, Inc.,* 455 F.2d 688 (8th Cir.1972), *cited with approval in Moore v. Lillebo,* 722 S.W.2d 683, 686 (Tex.1986).

■ Following the clear mandate of the Supreme Court of Texas, we find that testimony establishing the existence of a bond of affection between parents and child is sufficient circumstantial evidence to support the inference that the parents would suffer mental anguish as a result of the wrongful death of the child. The testimony offered proved the parents' joy in the company of their daughter, their pride in her accomplishments, and their hopes for the years to come. For such parents the death of a child represents a tremendous void in their lives. It is part of human nature to experience mental anguish and bereavement in the face of such a tragic loss. We, therefore, hold that there was sufficient evidence to support the jury finding of damages for past and future mental anguish, grief, and bereavement. The latter elements, grief and bereavement, are simply descriptive expressions of mental anguish and not additional elements of damage. Points of error six and eight are overruled.

■ The remaining appellant, Harris County, brings but one point of error. It contends that the trial court erred in entering any damages against the county for wrongful death because the Texas Wrongful Death Statute does not apply to counties. Alternatively, the county argues that its liability is limited to $100,000 as provided in the Texas Tort Claims Act. The point of error requires that this court determine whether enactment of the Texas Tort Claims Act waived the sovereign immunity of counties in the same manner that the Act effected a limited waiver of the immunity of other governmental entities.

The county argues that no cause of action for wrongful death existed at common law; the right to bring such a suit is purely statutory and is only a limited right that has never included the right to sue counties. The statute, as it existed at the time of Joan Deltscheff's death, provided in pertinent part:

When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness ... of another person ... [or] corporation ..., such per-

sons ... shall be liable in damages for the injuries causing such death. The term "corporation," as used in this article, shall include all municipal corporations, as well as all private and public and quasi public corporations, *except counties* and common and independent school districts.

Wrongful Death Statute, ch. 530, § 1, 1975 Tex.Gen.Laws 1381, *repealed by* Act of June 16, 1985, ch. 959, 1985 Tex.Sess. Law Serv. 7043 (Vernon). (Emphasis added.)

The exclusion of counties from the definition of corporations is maintained in the present form of the Wrongful Death Statute, now codified at Title 4, ch. 71, of the Civil Practice and Remedies Code (Vernon 1986).

We disagree that this provision of the Wrongful Death Statute is dispositive of the issue of the county's liability. The statute, originally enacted in 1860, provides a cause of action which did not exist at common law. *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182 (Tex.1968). The statutorily created right to sue for the wrongful death of another was limited from its inception: the historic immunity from suit of the state and certain political subdivisions was preserved in that the statute only extended the privilege to suits brought against specific entities, including persons and corporations. Counties and school districts were sometimes incorporated. The statute makes clear that these units of government, even when incorporated, were not to be construed as "corporations" as the term is used in the Act. That status has not changed. As defined by the Act, "corporation" means something other than a county or a school district. Tex.Civ. Prac. & Rem.Code Ann. § 71.001. The Texas Tort Claims Act rendered the exclusion from the definition irrelevant.

By adoption of the Texas Tort Claims Act in 1969, the Texas Legislature effected a limited waiver of the traditional sovereign immunity. It provided in pertinent part:

Sec. 2. (1) "Unit of government" or "units of government" shall mean the State of Texas and all of the several agencies of government which collectively constitute the government of the State of Texas, specifically including ... all political subdivisions, cities, *counties....*

Sec. 3. Each unit of government in the state shall be liable for money damages for ... *death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.*
....

Sec. 4. To the extent of such liability created by Section 3, immunity of the sovereign to suit, as heretofore recognized and practiced in the State of Texas with reference to units of government, is hereby expressly waived and abolished, and permission is hereby granted by the Legislature to all claimants to bring suit against the State of Texas, or any and all other units of government covered by this Act, for all claims arising hereunder.

Tort Claims Act,[1] ch. 292, 1969 Tex.Gen. Laws 874, *repealed by* Act of June 16, 1985, ch. 959, 1985 Tex.Sess.Law Serv. 7043 (Vernon). (Emphasis added.)

The language of the statute could not be more specific: units of government, including counties, that previously enjoyed immunity from suit, shall now be liable for damages for death in certain prescribed situations *if a private person would be so liable.* The liability of a private person is set out in the Wrongful Death Statute, quoted above. The fact that counties are not "corporations" as used in the statute, while still true, is irrelevant to the issue of their liability for wrongful death. The relevant fact is that the liability of a county is, under certain conditions, that of a private person.

---

1. The provisions of the Tort Claims Act, previously reported as Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon) are now codified as Title 5, ch. 101, of the Civil Practice and Remedies Code (Vernon 1986).

The Supreme Court of Texas has recognized the liability of school districts for wrongful death under the Texas Tort Claims Act. *Madisonville Independent School District v. Kyle,* 658 S.W.2d 149, 150 (Tex.1983). Under the Wrongful Death Statute, school districts had enjoyed the same special status as did counties. The county seeks to distinguish the case, arguing that the issue of the exemption under the Wrongful Death Statute was never raised. Because of the clear language of the Texas Tort Claims Act and the specificity of the waiver of sovereign immunity, the fact that the issue has not been addressed in *Kyle* or other cases is not remarkable.

The Beaumont Court of Civil Appeals has expressly held that under the provisions of the Texas Tort Claims Act a county is liable in damages for injuries *or death* caused by the negligent act of a county employee. *County of Brazoria v. Radtke,* 566 S.W.2d 326, 329 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Although *Radtke* involved a claim for personal injury rather than wrongful death, there can be no rational reason for imposing liability on a county who negligently causes injuries but excusing one who negligently injures with fatal results.

We, therefore, hold that the Wrongful Death Statute does not exempt counties from liability for wrongful death imposed by the limited waiver provisions of the Texas Tort Claims Act. The point of error brought by Harris County is overruled.

■ By post-submission brief permitted by this court, Harris County contends that should liability be imposed upon the county by virtue of the Texas Tort Claims Act it should be limited to $100,000 as provided in the statute. Tort claims Act, ch. 292, 1969 Tex.Gen.Laws 874, (repealed 1985). This issue was raised by the court during oral argument and all parties were given the opportunity to address it. The judgment signed by the trial court recited that the jury had found Harris County to be ninety percent negligent and Whipple to be ten percent negligent. It ordered that Harris County and Whipple were jointly and severally liable for damages in the amount of $273,000 and prejudgment interest in the amount of $55,711.54. The amount to be paid by each defendant was not specified further. The liability assigned to the county for the damage award alone exceeds the statutory maximum of $100,000.

The Supreme Court of Texas has consistently restricted the amount of damages imposed on governmental units to the maximum allowed by the Texas Tort Claims Act. *See Trinity River Authority v. Williams,* 689 S.W.2d 883, 886 (Tex.1985); *Weller v. State,* 682 S.W.2d 234 (Tex.1984); *City of Austin v. Cooksey,* 570 S.W.2d 386, 387 (Tex.1978). Since the county would have no liability but for the Act, the limitations of the Act must be accepted along with its benefits. *Cooksey,* 570 S.W.2d at 387. The Court has held that (i) the maximum recovery under the Texas Tort Claims Act is $100,000 per person injured (*Id.* at 388); (ii) the Act prohibits the addition of prejudgment interest; and (iii) there is no statutory right to prejudgment interest. *Weller,* 682 S.W.2d at 234. Appellate court holdings have further enforced the limitations of the Act. A sovereign does not waive the $100,000 limit of liability imposed by the Texas Tort Claims Act by failure to plead and urge it; the damages are strictly limited to those imposed by the statute. *City of Houston v. Arney,* 680 S.W.2d 867, 874–75 (Tex.App.—Houston [1st Dist.] 1984, no writ); *State Highway Department v. Pinner,* 531 S.W.2d 851, 858 (Tex. Civ.App.—Beaumont 1975, no writ).

We, therefore, reform the judgment and limit Harris County's liability for damages to $100,000 as provided in the Texas Tort Claims Act. The remaining defendant, Lorraine Whipple, remains jointly and severally liable for the amount of the judgment in excess of $100,000.

The judgment of the trial court is reformed and, as reformed, affirmed.