**HARRIS COUNTY HOSPITAL DISTRICT, Appellant,**

v.

**Joe ESTRADA, Stella Paredes, Reynaldo Estrada, Mary Elizabeth Landin, Deborah Luna, Anthony Luna, Herman Luna, Armando Luna, Mike Martinez, and John Luna, All Individually and as Surviving Heirs at Law and Next of Kin of Carolina R. Gonzales, Deceased; Linda Vega, Individually and as Surviving Heir at Law and Next of Kin of Carolina R. Gonzales, Deceased, and as Next Friend of Jesus Gonzales, Jr.; and Rebecca Gonzales, Individually and as Surviving Heir at Law and Next of Kin of Carolina R. Gonzales, Deceased, and as Personal Representative of the Estate of Carolina R. Gonzales, Deceased, Appellees.**

**No. 01–92–00130–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 4, 1993.

Mike Driscoll, Daniel J. Simms, Houston, for appellant.

Tom Edwards, Patrice M. Barron, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and COHEN, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a wrongful death and survival action brought against appellant, Harris County Hospital District (the District), under the Texas Tort Claims Act. The principal question is whether the District's liability is limited to $100,000 when one person was killed, but multiple claimants brought two claims, wrongful death and survival. The trial judge awarded a total of $200,000, divided equally between the two causes of action. We hold this was error. Consequently, we reform the judgment by reducing it to $100,000. As so reformed, we affirm.

### Facts

On January 27, 1988, 73–year–old Carolina Gonzales went to the District's West End Medical Clinic. Dr. John Bradberry, a Baylor College of Medicine resident physician, saw Gonzales as an out-patient and prescribed bactrim, a sulfa drug. Gonzales was allergic to sulfa drugs, and the day after taking one bactrim, she became sick and went to another hospital. Gonzales suffered a severe allergic reaction to the drug and died 16 days later.

Before filing this suit, appellees settled with Bradberry and Baylor College of Medicine for $230,000. Appellees then sued the District, alleging that errors in record keeping by the nurses and medical-clerical personnel, as well as the lack of cross-referenc-

ing for allergy history at the hospital pharmacy, caused the prescription and dispensation of the sulfa drug, which led to Gonzales' death.

In a non-jury trial, the judge found the District's negligence was 35 percent responsible for appellee's damages, which totaled $350,000, and granted judgment against the District for $200,000, awarding $100,000 to the wrongful death claimants and $100,000 for the estate's survival claim.[1] Appellees moved to dismiss the appeal for lack of jurisdiction, but this Court overruled that motion. This appeal followed.

In point of error two, appellant claims the trial judge erred in allowing an unqualified witness to testify as an expert. The District contends that Deborah Lessard, appellees' nurse expert, was not qualified to testify as an expert because she had no experience, familiarity, or certification in nursing or health care administration, demonstrated no knowledge or familiarity with transcription of medication procedures or the applicable standard of care, was not certified in nursing administration, and offered no testimony to show she was certified in health care administration.

 Whether a witness qualifies as an expert is within the trial judge's discretion and will be reversed only for abuse of discretion. *Sears v. Cooper,* 574 S.W.2d 612, 615 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). A nonphysician nurse, even one who is not a registered nurse but is familiar with the standard of care at another similar hospital, can qualify by experience to testify as a medical expert in a medical malpractice action. *Johnson v. Hermann Hosp.,* 659 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The nurse need not be certified or familiar with the standard of care in a particular locale, so long as the nurse is familiar with the standard of care at another hospital that is similar. *Id.*

 Lessard was a registered nurse with clinical experience, including four years work experience at clinics within the Hospital District, as well as an attorney experienced in evaluating cases from the standpoint of hospital liability. Although she could not specifically testify as to the clinics' individual division of duties, she was familiar with general nursing duties within the Hospital District.

Moreover, Lessard testified she was familiar with the applicable standard of care for nurses, particularly as to the standard of care regarding allergies and prescriptions. For example, she testified that after the doctor has seen a patient and written prescriptions, it was then the discharge nurse's independent duty to compare the prescription with the patient's chart for contradictions, such as allergies, and to bring any inconsistencies to the doctor's attention for correction. Further, Lessard testified that after the discharge nurse reviews the written prescription and compares it to the chart, but before sending the patient to the on-premises pharmacy with the written prescription, the nurse is supposed to instruct the patient or the caretaker what to do if there is an adverse reaction. In sum, the record reflects Lessard was experienced and familiar with the standard of care. The trial judge here did not abuse his discretion by allowing her to testify as an expert.

We overrule point of error two.

 In point of error five, appellant contends the trial judge erred in not granting the District a directed verdict because appellees failed to prove causation. Appellant argues there was no proof that faulty record keeping caused Gonzales' death.

Appellees claim the evidence shows that the District's breach of duty in their record keeping, the failure to properly cross-check the prescription with known allergies, and the failure to instruct Gonzales on how to proceed in the event of an allergic reaction, proximately caused the sulfa drug to be dispensed to Gonzales, which caused the allergic reaction and her death.

Dr. Chi C. Mao, the physician who admitted Gonzales to the Heights Hospital emergency room after she ingested the sulfa drug,

---

1. The District was jointly and severally liable for the entire judgment as a result of the 35 percent finding. Tex Civ Prac & Rem.Code Ann. § 33.013 (Vernon Supp.1993).

testified that the main cause of Gonzales' death was a severe allergic reaction to a sulfa drug. Moreover, Gonzales' death certificate states the cause of death was a severe allergic reaction to the sulfa drug. Thus, there is factually and legally sufficient evidence to show the sulfa drug caused Gonzales' death.

■ We next consider whether there was sufficient evidence that the nurses' negligence caused the dispensation of the sulfa drug.

Dr. Bradberry testified that in prescribing the sulfa drug, he relied on the District's computer printout that showed Gonzales had *no* allergies. The one-page computer printout sheet comes with the patient file given to the doctor when he sees the patient. The printout sheet is supposed to summarize the medical data contained in the chart, so that the doctor does not have to examine the entire chart. The medical records clerk is responsible for including relevant medical information in the updated computer sheet. In this case, however, the computer printout on top omitted the fact that Gonzales was allergic to sulfa drugs, a fact known to the clinic and contained in the records underneath the cover sheet.

Lessard testified that the sole proximate cause of the misprescription and death was the negligent recordkeeping by the District's nurses and staff. She testified it was foreseeable that the inconsistency in Gonzales' records could lead to the misprescription and death. Specifically, Lessard testified that after the doctor has seen a patient and written prescriptions, it is the discharge nurse's independent duty to compare the prescription with the patient's chart for contradictions and to bring any inconsistencies to the attention of the doctor to clarify or correct. Lessard and Bradberry testified clinic records showed several omissions and inconsistencies concerning Gonzales' allergy that should have been corrected by District employees. Lessard also testified that pointing out any inconsistency between the prescription and the chart is particularly important with a resident doctor, such as Bradberry, as opposed to a medical doctor who had completed the residency. Lessard testified the inconsistency could and should have been

identified several times before it was too late, but it was not.

Finally, Lessard and nurse Loughron, the District's witness, testified that the clinic staff should have told Gonzales what to do if she had an adverse reaction to the drug. Evidence showed the staff should have instructed Gonzales to seek medical attention within 20 minutes to an hour of any adverse reaction because, if treated quickly, the reaction could be reversed. Lessard testified this failure to properly instruct was a proximate cause of the death, because, if Gonzales had been properly instructed and had sought treatment immediately after her reaction started, it would have been possible to reverse that reaction. We hold the evidence was sufficient.

We overrule point of error five.

In points of error one, three, and four, appellant challenges the factual and legal sufficiency of the evidence and also challenges some implied factual findings of the trial judge.

■ Appellant did not request any findings of fact, and none were filed. Thus, we will imply all the findings necessary to support the judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). In determining whether some evidence supports the implied findings of fact, we consider only the evidence favorable to the judgment and disregard all evidence to the contrary. *Id.* The judgment will be affirmed on any legal theory supported by the evidence. *Id.*

In point of error one, appellant claims appellees failed to prove proximate cause. We overrule this point of error for the same reason we overruled point of error five.

In points of error three and four, appellant challenges the award of damages on four grounds. First, appellant claims there was no evidence of $350,000 in damages. Appellant argues that appellees offered no evidence of Gonzales' income, life expectancy, or any testimony to prove damages.

Courts typically give the fact finder "considerable latitude" in awarding damages in personal injury and wrongful death actions because those damages cannot be proved

with great certainty. *See Brazoria County v. Davenport,* 780 S.W.2d 827, 931 (Tex. App.—Houston [1st Dist.] 1989, no writ); *Leonard & Harral Packing Co. v. Hahn,* 571 S.W.2d 201, 204 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). Here, the trial judge found total damages of $350,000 and entered judgment against the District for $100,000 on the survival claim and for $100,000 on the wrongful death claim.

■■■■ The survival action is the estate's claim for personal injuries and includes damages for the conscious pain and mental anguish Gonzales suffered before her death. TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986); *Levinge Corp. v. Ledezma,* 752 S.W.2d 641, 645 (Tex.App.—Houston [1st Dist.] 1988, no writ). Gonzales' hospital bill was approximately $46,000. The evidence shows Gonzales suffered a gruesome and painful 16 days prior to her death. The drug caused her to feel as if she was being burned from the inside out. She was conscious, her body was swollen, and her skin was severely blistered, getting worse from one day to the next. We hold the evidence of damages in the survival action was sufficient. *See, e.g., Levinge,* 752 S.W.2d at 645 ($175,000 award of damages for decedent's pain and suffering upheld although he was conscious and in severe pain for only short time).

■■■■ In a wrongful death case, a fact finder may award a decedent's family damages for their mental anguish and loss of society, companionship and affection. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 635–36 (Tex.1986); *Sanchez v. Schindler,* 651 S.W.2d 249, 259 (Tex.1983) (op. on reh'g). Evidence showed Gonzales held the large but close-knit family together; she was survived by seven children, and Gonzales contributed to the support of one of her adult children who was brain damaged. Family members saw Gonzales, conscious and alert, suffer a slow, painful death for 16 days. The evidence of Gonzales' pain and suffering was

horrific. One family member described Gonzales' body as swollen and smelling like burned meat. Another recalled how Gonzales' skin once came off when the bedsheet was lifted. We hold the evidence supported the award of damages on the wrongful death claim.

We overrule this portion of points of error three and four.

■■■■ Before suing the District, appellees settled for $230,000 with Dr. Bradberry and Baylor College of Medicine. The District was the only remaining defendant, and the trial judge found it 35 percent responsible for Gonzales' damages. In its second argument under these points of error, the District claims that because it was the only defendant, we should assume the trial judge assessed the remaining 65 percent of the responsibility against appellees. Consequently, the District argues, appellees' recovery is barred because their responsibility exceeds 50 percent. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.001(a) (Vernon Supp.1993).

■■■■ Presumptions are made in favor of the judgment, not against it. *Worford,* 801 S.W.2d at 109. The District neither pled nor proved contributory negligence. The contention has no merit.

In their third argument under points of error three and four, the District contends its maximum liability under the Texas Tort Claims Act, is $100,000. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.023(b) (Vernon Supp. 1993).[2]

■■■■ Initially, appellees argue that although the District pled governmental immunity and objected in its motion for new trial that the evidence was insufficient to support the damage award, it never objected to the judgment on the basis of section 101.023(b). Thus, appellees urge, the District waived the limitation on liability by failing to object on that basis. For support, appellees rely on *Davis v. City of San Antonio,* 752 S.W.2d

---

2. The statute reads:

Except as provided by Subsection (c), liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

TEX.CIV.PRAC. & REM CODE ANN. § 101.023(b) (Vernon Supp.1993).

518, 519 (Tex.1988), and *Winograd v. Clear Lake City Water Authority,* 811 S.W.2d 147, 156 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

Those cases are distinguishable. In *Davis,* the government failed to plead sovereign immunity and thus waived it. 752 S.W.2d at 519–20. Here, the District pled the $100,000 limit. In *Winograd,* claims of immunity were disallowed by a finding of bad faith. 811 S.W.2d at 159. Here, there is no finding of bad faith. Moreover, Tex.R.App.P. 52(d) allows a party in a nonjury trial to complain of excessive damages without making a complaint on that subject in the trial court.

Finally, this Court has held a sovereign does not waive the $100,000 limit of liability imposed by the Texas Tort Claims Act by failure to plead and urge it. *City of Houston v. Arney,* 680 S.W.2d 867, 874–75 (Tex. App.—Houston [1st Dist.] 1984, no writ). In *Arney,* the city's answer was stricken as a discovery sanction, and the trial judge rendered a default judgment in excess of the Act's liability limits. Nonetheless, this Court refused to hold that the $100,000 limit was waived. 680 S.W.2d at 874–75. Other courts, as well, have reasoned that since the governmental unit would have no liability but for the Act, the Act's limitations must be accepted along with its benefits. *See, e.g., Whipple v. Deltscheff,* 731 S.W.2d 700, 705 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding damages are strictly limited to those imposed by statute). Thus, the issue is preserved for review.

Alternatively, appellees argue the $200,000 award is proper because, in addition to their derivative losses by reason of Gonzales' death, Gonzales' children suffered separate and individual injuries.

The Texas Supreme Court has disapproved awards exceeding $100,000 for the death of a single person. *Madisonville Indep. Sch. Dist. v. Kyle,* 658 S.W.2d 149, 150 (Tex.1983). In *Kyle,* a child was severely injured in an automobile collision. Death was not instantaneous; he died a few hours later. *Id.* The trial court awarded more than $100,000 to the parents. The supreme court reduced that amount to $100,000. *Id.* In *City of Austin v. Cooksey,* 570 S.W.2d 386 (Tex.

1978), the lower courts made and affirmed an award exceeding $100,000 to the widow, mother, and children of a man killed. The court wrote:

> When one person is injured or killed, and one plaintiff brings suit, the applicable limit of liability is $100,000. That limit should not change simply because the deceased is survived by two or more statutory beneficiaries under the wrongful death statute.
>
> The controversy here centers around whether the term "per person" in the statute refers to the person injured or those persons who suffer a loss as a result of injury to someone else. We think the clear meaning of the statute is that it refers to the person or persons who sustain injury.... To construe "per person" to mean "per claimant" would mean that a sole surviving heir would be limited to the same recovery when he suffered loss from the death of two or more persons in the same accident as when he suffered loss from the death of only one person.
>
> We hold that the State's liability is limited to $100,000 as a result of the wrongful death of Michael Cooksey.

*Id.* at 387–88 (citations omitted). After *Cooksey,* it cannot be argued that the Act allows a recovery of $100,000 per claimant.

Appellees argue, however, that they are entitled to $100,000 per claim because they recovered under two different statutes granting relief for two different types of loss to two different groups of beneficiaries. Two courts of appeals have allowed awards exceeding $100,000 for a single injury under these circumstances. In *City of Denton v. Page,* 683 S.W.2d 180, 205–206 (Tex.App.—Fort Worth 1985), *rev'd on other grounds,* 701 S.W.2d 831 (Tex.1986), the court upheld an award exceeding $100,000 to a wife and a husband, even though the husband was the only one physically injured. The court distinguished *City of Austin v. Cooksey* on the basis that the plaintiffs' claims there were based solely on the wrongful death of the deceased, not on any injury sustained by the plaintiffs themselves. The court held that Mrs. Page had suffered injury herself, specifically, mental anguish, loss of consortium,

and loss of services, and that those damages were "the type of injury which formed the basis of a separate and independent cause of action which injury is compensable under the Act." *Id.* at 206. The court of appeals in *Page* cited no judicial decisions supporting this conclusion. The Texas Supreme Court reversed the court of appeals' judgment in *Page* and rendered judgment that Mr. and Mrs. Page take nothing. 701 S.W.2d 831, 835 (Tex.1986). Because the supreme court found no liability, it did not discuss the statutory limitation on damages. Thus, the intermediate court's holding on damages in *Page* is, at least, questionable.

In *City of Austin v. Davis*, 693 S.W.2d 31 (Tex.App.—Austin 1985, writ ref'd n.r.e.), the court allowed a wrongful death recovery in excess of $100,000. The deceased's statutory beneficiaries, excluding his father, settled their wrongful death claim for $93,000, and the father sued for his own mental distress and physical injuries sustained as a result of discovering his son's body. *Id.* at 33. The court held the father was a bystander suing for injuries he personally suffered, not for damages resulting from his son's wrongful death, and thus the father, in addition to the son, was "a person injured" under the Tort Claims Act. *Id.* at 34. The court cited no case allowing a recovery exceeding $100,000 where the State's negligence physically injured only one person. Thus, *Davis* supports appellees because it required the State to pay more than $100,000 although only one person was physically injured.

We decline to follow *Davis* and *Page* because we cannot reconcile them with *Cooksey*. *Cooksey* disapproved of recoveries exceeding $100,000 for a single death just because there were two or more statutory wrongful death beneficiaries. Nothing suggests to us that the court was pondering a different result where claimants (of whatever number) have multiple causes of action. Concluding that the "per person" language in the Tort Claims Act refers to the person physically injured by the State's negligence, and not others, the *Cooksey* court wrote:

Similar provisions are often found in liability insurance policies. The insurance cases uniformly hold that the terms "per person" or "each person" or the like refer to the person injured. This is especially true in cases in which the words of limitation refer to "bodily injury" as they do in the Texas Tort Claims Act.

570 S.W.2d at 388 (citations omitted). If the insurance cases cited in *Cooksey* should guide our decision, we doubt that the expansive interpretation urged by appellees can be used to raise the government's limit of liability to $100,000 for every cause of action (survival, wrongful death, bystander, etc.) on which various plaintiffs may prevail in case where the State's negligence physically injured only one person. *Accord Texas Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 465–66 (Tex.App.—Houston [14th Dist.] (1993) (holding that the phrase "each person" in the Tort Claims Act refers only to a person who suffers bodily injury or death).

We sustain point of error three and reform the judgment by reducing it from $200,000 to $100,000.

Appellees contend in a cross-point of error that we have no jurisdiction because the cost bond was filed too late. We overrule the point for the reasons stated earlier in *Harris County Hospital District v. Estrada*, 831 S.W.2d 876, 880 (Tex.App.—Houston [1st Dist.] 1992) (order).

As so reformed, the judgment is affirmed.

MIRABAL, Justice, concurring.

I agree that, under the Texas Tort Claims Act, appellees are limited to a recovery of $100,000 against the Harris County Hospital District. I write to stress that I reach this conclusion because of the nature of the causes of action brought by appellees.

This is not a suit for damages under the "bystander doctrine." Therefore, it is distinguishable from *City of Austin v. Davis*, 693 S.W.2d 31 (Tex.App.—Austin 1985, writ ref'd n.r.e.).[1]

1. In my opinion, *Davis* can be reconciled with *City of Austin v. Cooksey*, 570 S.W.2d 386 (Tex. 1978). *Cooksey* involved a suit under the wrongful death statute, a "derivative" cause of action; *Davis* involved a suit under the "bystander doctrine," which is not a "derivative" claim.

In a recent opinion, our sister court held that, when a wife's claims for damages are *derivative* of her husband's claims for injuries he suffered as a result of the negligence of the State, the wife is not entitled to her own "per person" damage allocation under the Texas Tort Claims Act. *Texas Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 465 (Tex.App.—Houston [14th Dist.] 1993, n.w.h.) (not yet reported). The *Ramming* court limited the total damage award to the husband and wife to the "one-person" cap in the Texas Tort Claims Act. 861 S.W.2d at 466. I agree with the analysis in *Ramming*.

Appellees brought two actions: a survival action and a wrongful death action. Wrongful death actions and survival actions are "wholly derivative of the decedent's rights." *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992). The Texas Supreme Court has consistently held that the right of statutory beneficiaries, under the Wrongful Death Statute,[2] to maintain a wrongful death action is "entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent's actions would have been subject." *Russell*, 841 S.W.2d at 347. Wrongful death action plaintiffs stand in the legal shoes of the decedent. *Id.*

Because of the derivative nature of survival and wrongful death actions, I conclude we are constrained by *Cooksey* to hold that appellees' recovery is limited to $100,000.00 for the damages incurred as a result of the wrongful death of the deceased in this case.

OLIVER–PARROTT, Chief Justice, dissenting.

I respectfully dissent. The $200,000 award for damages under the Texas Tort Claims Act was correct, and should not have been reduced by the majority to $100,000.

The trial judge found the hospital district 35 percent responsible for negligently prescribing for Carolina Gonzales a drug to which they knew she was allergic. Her children, without knowing its destined effect, gave Gonzales that drug and then watched for 16 days as it caused her slow, painful, and horrific death. Appellees (Gonzales' estate and her children) brought two actions: a survival claim and a wrongful death claim. The judge awarded appellees $100,000 on each claim. The district asserts that the Texas Tort Claims Act limits the damages recoverable for this incident to $100,000. Thus, we must decide if the decedent and the wrongful death beneficiaries are both "persons injured" under the Texas Tort Claims Act, allowing up to $200,000 in damages; $100,000 for the survival claim and $100,000 for the wrongful death claim. I would hold that they are, and affirm the judgment.

### Damage Limitation

The hospital district is liable only to the extent that its sovereign immunity has been waived by the Texas Tort Claims Act. The Act limits the district's liability for bodily injury or death to $100,000 for each person and $300,000 for each occurrence. The limitation provision reads:

> Except as provided by Subsection (c), liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.023(b) (Vernon Supp.1993).

The district argues, and the majority holds, that the "per person" language in the Act refers to the person injured (the deceased), not to the persons who suffer loss as a result of injury to someone else (the wrongful death beneficiaries). The majority then reduces the $200,000 judgment to $100,000, and awards it, by implication, only to the survival claim.[1] I disagree with this inter-

---

2. TEX.CIV.PRAC. & REM.CODE ANN. § 71.002 (Vernon 1986).

1. The majority does not explicitly state how they would apportion the $100,000 award. Their conclusion, however, that the "per person" language in the Act refers to the person physically injured, not to the persons who suffer a loss as a result of that injury, seems to indicate the $100,000 would go to the survival claim, as that claim is for Gonzales' injuries. Moreover, the award of

pretation of the Act and with the result that follows. If persons who suffer loss as a result of the death of someone else (the wrongful death beneficiaries) are not "persons injured" under the Act, then wrongful death claims could only succeed under the Act if there is no valid survival action. That holding runs contrary to the supreme court authority cited by the majority. Simply stated, appellees are entitled to $200,000 because they brought claims under two different statutes that grant relief for two different injuries suffered by two different parties: (1) the survival claim compensates Gonzales for her injury; and (2) the wrongful death claim compensates her children for their injuries.

### The Injury to Gonzales: The Survival Action

The evidence shows that the district caused severe injuries to Carolina Gonzales, injuries that led to her gruesome death. Historically, a person's cause of action for personal injuries did not survive their death. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 845 (Tex.1990). The common law was abrogated when the legislature created what is called the survival statute. TEX.CIV.PRAC. & REM. CODE ANN. § 71.021 (Vernon 1986).[2] This statute is designed to allow the decedent's estate, on her behalf, to recover for the damages the decedent sustained while alive. The supreme court recently described the survival action as follows:

> By this statute, a decedent's action survives his death and may be prosecuted in his behalf. The survival action, as it is sometimes called, is wholly derivative of

the decedent's rights. *The actionable wrong is that which the decedent suffered before his death. The damages recoverable are those which he himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs (except that funeral expenses may also be recovered if they were not awarded in a wrongful death action).* Any recovery obtained flows to those who would have recovered it had he obtained it immediately prior to his death—that is, his heirs, legal representatives and estate.

*Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992) (citations omitted) (emphasis added.)

Here, the majority correctly found the evidence sufficient to sustain the $100,000 damages award to Gonzales and her estate under the survival claim. Without question, Carolina Gonzales is a "person injured" under the Tort Claims Act, and her estate is entitled to the $100,000 award.

### The Injury to the Children: The Wrongful Death Action

In addition to injuring Carolina Gonzales, the district also injured Gonzales' children when it caused her death. At common law, no cause of action could be brought for the death of another person. *Rose*, 801 S.W.2d at 845. The legislature, however, has also abrogated this rule by creating the wrongful death action. TEX.CIV.PRAC. & REM.CODE ANN. § 71.002 (Vernon 1986).[3] A wrongful death action is separate and distinct from a survival action. The survival action recovers for the personal injuries suffered by the de-

---

any money on the wrongful death claim, since it is designed to compensate the children for their injuries, would be an implicit finding that they were "persons injured" under the Act, a result contrary to the majority's position.

2. **§ 71.021. Survival Cause of Action**
 (a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.
 (b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

(c) The suit may be instituted and prosecuted as if the liable person were alive.

3. **§ 71.002. Cause of Action**
 (a) An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section
 (b) A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default. TEX.CIV.PRAC. & REM.CODE ANN. § 71.002(a) and (b) (Vernon 1986).

ceased before death and benefits whomever is the beneficiary of the decedent's estate. See TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986). The wrongful death action is "for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Section 71.004(a). Clearly, the legislature believed wrongful death beneficiaries should be allowed to recover for their own injuries, independent of the injuries suffered by the deceased; "The jury may award damages in an amount proportionate *to the injury resulting from the death.*" Section 71.010(a) (emphasis added). A factfinder may award a decedent's family damages for their pecuniary loss, mental anguish, loss of society, companionship and affection, and loss of inheritance. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 635–36 (Tex.1986); *Sanchez v. Schindler,* 651 S.W.2d 249, 259 (Tex.1983) (op. on reh'g). Thus, the $100,000 award on the wrongful death action compensates Gonzales' children *for the injuries the district caused them.*

The majority agrees that the factfinder in a wrongful death claim may award a decedent's family damages for their injuries, and outlines the evidence of the damages suffered by the wrongful death claimants (Gonzales' children). The majority then rejects the district's factual sufficiency challenge, and finds the evidence sufficient to support the damage award of $100,000. Yet, despite finding that the wrongful death claimants suffered $100,000 in damages, the majority concludes those claimants are not "persons injured" for purposes of the Act. That conclusion, the majority asserts, is compelled by two supreme court cases interpreting the Act: *Madisonville Independent School District v. Kyle,* 658 S.W.2d 149 (Tex.1983), and *City of Austin v. Cooksey,* 570 S.W.2d 386 (Tex.1978).

In *Kyle,* a child was killed, and the trial court awarded more than $100,000 to the parents *for a wrongful death claim.* 658 S.W.2d at 150. Similarly, in *Cooksey,* a man was killed, and the lower courts made and affirmed an award of more than $100,000 to the widow, mother, and children *for a wrongful death claim.* 570 S.W.2d at 387–88. In both cases, the supreme court limited the liability under the Act, *for a wrongful death claim,* to $100,000. The court reasoned that an action for wrongful death is one action, no matter how many claimants are separately injured by the death. *Kyle,* 658 S.W.2d at 150; *Cooksey,* 570 S.W.2d at 387–88. Thus, in *Kyle* and *Cooksey,* the supreme court made it clear that the maximum recovery *for a wrongful death claim* under the Act is $100,000, regardless of whether there is more than one wrongful death beneficiary. *Id.*

The majority reads *Kyle* and *Cooksey* to bar the award of more than $100,000 under the Act for the death of one person, regardless of the number of distinct causes of action made, e.g., wrongful death, survival, and bystander, etc. I do not believe that those cases should be so broadly read. I recognize that wrongful death actions are derivative of the decedent's rights. *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345–47 (Tex. 1992). I also recognize that, as the majority points out, the court in *Cooksey* concluded that the "per person" language in the Tort Claims Act refers to the person injured, not to the persons who suffer loss as a result of injury to someone else. Nevertheless, the supreme court only made the statement regarding derivative injuries in the context of rejecting the attempt of multiple wrongful death claimants to recover $100,000 apiece under one wrongful death action. It does not necessarily follow that any and all wrongful death beneficiaries, because they have suffered derivative injuries, cannot be considered a "person injured" under the Act. If that were the case, the supreme court would not have allowed the wrongful death beneficiaries to recover anything for their derivative injuries in *Kyle* and *Cooksey.* As such, regardless of whether the harm suffered by the wrongful death beneficiaries is labeled an "injury," a "derivative injury," or "a loss as a result of an injury to someone else," one thing is clear: *Kyle* and *Cooksey* allow wrongful death claimants a combined total recovery of up to $100,000 as "persons injured" under the Act.

Applied here, *Kyle* and *Cooksey* simply prevent each one of Gonzales' seven wrongful death beneficiaries from claiming $100,000 each. Those beneficiaries, however, did not seek or receive $100,000 apiece. Instead,

they received $100,000 total for the entire wrongful death claim. Thus, that result is entirely consistent with the supreme court's holdings in *Kyle* and *Cooksey*.[4]

### Can the Awards for the Two Different Injuries Stand Together?

If this case consisted solely of the survival claim, Gonzales' estate would be entitled to $100,000. Likewise, if this case consisted solely of the wrongful death claim, the children would be entitled to $100,000. Consequently, the question is whether both awards can be sustained together in the same case. Two courts of appeals faced with situations similar to this have allowed recovery under the Act in excess of $100,000 for a "single physical injury." *See City of Denton v. Van Page,* 683 S.W.2d 180, 205–06 (Tex.App.— Fort Worth 1985), *rev'd on other grounds,* 701 S.W.2d 831 (Tex.1986) (award exceeding $100,000 upheld where husband was physically injured and wife suffered mental anguish, loss of consortium, and loss of services); *City of Austin v. Davis,* 693 S.W.2d 31, 34 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (decedent's statutory beneficiaries, excluding father, received $93,000 on wrongful death claim and father was allowed to recover up to $100,000 on his separate bystander claim). In both cases, the government was negligent, causing physical injuries to one party and derivative-type injuries to a family member. In both cases, the courts allowed the physically injured and the family member to recover for the injuries they each suffered. *Van Page,* 683 S.W.2d at 205–206; *Davis,* 693 S.W.2d at 34.

The majority declines to follow *Van Page* and *Davis,* concluding those cases cannot be reconciled with *Cooksey.* I disagree with that conclusion. As outlined above, *Cooksey* addresses considerations pertinent only when multiple claimants in a wrongful death action seek $100,000 apiece. Contrary to the majority's position, *Cooksey* in no way addresses the situation present in *Van Page, Davis,* and here: different claims for different injuries to different parties. I also disagree with

the analysis of our sister court in *Texas Department of Transportation v. Ramming,* 861 S.W.2d 460 (Tex.App.—Houston [14th Dist.], 1993, n.w.h.) (not yet reported).

Additionally, the majority's interpretation of the law would abolish or amend statutorially mandated causes of action. Such a result is contrary to the laws of statutory construction that requires our statutes should be read in a manner which gives meaning to each statute. *J. & J. Beverage Co. v. Texas Alcoholic Beverage Comm'n,* 810 S.W.2d 859, 860 (Tex.App.—Dallas 1991, no writ). Wherever possible, they should be interpreted in harmony with one another. *Valdez v. Texas Childrens Hosp.,* 673 S.W.2d 342, 344 (Tex. App.—Houston [1st Dist.] 1984, no writ). Under the majority's rule, either Gonzales' survival claim or her statutory beneficiaries' wrongful death claim was abolished completely, or each statutory cause of action was arbitrarily limited to $50,000.

We can presume that both the survival statute and the wrongful death statute were exacted by the legislature with complete knowledge of the Tort Claims Act and with reference to it. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990). Since we are mandated to apply statutes in a manner that assures harmony, I respectfully assert that the majority's application is contrary to the law of statutory construction. *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984).

In light of these considerations, and the legislative directive to liberally construe the Tort Claims Act in favor of the claimant, *see Davis,* 693 S.W.2d at 34; *Jenkins v. State,* 570 S.W.2d 175, 178 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ), I would hold that both Gonzales and her wrongful death beneficiaries were "persons injured" under the Act. As such, appellees would be entitled to recover the $200,000 award for damages: $100,000 for the survival claim and $100,000 for the wrongful death claim.

---

4. For the same reasons, it is also consistent with *Harris County v. White,* 823 S.W.2d 385 (Tex. App.—Texarkana 1992, no writ) (court rejects

wrongful death beneficiaries' attempt to recover $100,000 per wrongful death claimant).